Filed 1/9/25  In re M.R. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re M.R. et al., Persons Coming Under the Juvenile Court Law. | B331896 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 20CCJP05324A, B) |
| Plaintiff and Respondent, | |
| v. | |
| W.R. et al., | |
| Defendants and Appellants. | |

APPEAL from findings and orders of the Superior Court of Los Angeles County, Tamara Hall, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Ernesto Paz Rey, under appointment by the Court of Appeal, for Defendant and Appellant W.R.

Sarah Vaona, under appointment by the Court of Appeal, for Defendant and Appellant K.V.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Sally Son, Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

Both parents appeal the juvenile court's order terminating their parental rights to minors M.R. and J.R. K.V. (Mother) contends reversal is warranted because the juvenile court and the Los Angeles County Department of Children and Family Services (DCFS) failed to satisfy the initial inquiry requirements under the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and related California law (Welf. & Inst. Code,[1] § 224 et seq.). W.R. (Father) contends the juvenile court erred when it terminated his parental rights "in the absence of a valid finding of detriment." Father also argues that the juvenile court erred in finding the beneficial relationship exception to adoption did not apply.

We agree with Mother that DCFS did not properly discharge its statutory duty of initial inquiry. We disagree with Father's contentions. We conditionally reverse and remand with directions to the juvenile court to order DCFS to ask extended family members about the children's possible Indian heritage under ICWA. We affirm the juvenile court's findings and orders in all other respects.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. *Petition and Detention*

On October 7, 2020, DCFS filed a petition on behalf of the children, pursuant to section 300, subdivision (b)(1). The petition alleged Mother placed the children in a "detrimental and endangering situation" on October 5, 2020 as she "drove a vehicle

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

at a high rate of speed while the children were passengers," crashed into a parked vehicle, "resulting in the family's vehicle repeatedly flipping over, causing the children fear." J.R. suffered a bloody nose and a contusion to his head, while M.R. suffered pain to her stomach and head. Law enforcement located an unregistered firearm and methamphetamine in the vehicle within access to the children. Mother was arrested for child endangerment. The petition includes an Indian Child Inquiry Attachment—Judicial Council form ICWA-010(A)—which provides the children have no known Indian ancestry. The attachment indicates Mother "does not have anyone in her family with Native American Indian Heritage."

A children's social worker (CSW) interviewed Mother at jail. When asked about Native American heritage, Mother stated there is no such heritage "in her family or [F]ather's family." As to car incident, Mother "remembered . . . hitting something but does not know what it was." When asked about the gun and drugs found in her car, Mother said she sells drugs "to make money" and "us[es] the gun to protect herself." M.R. told the CSW she had seen a gun before and she stated, "[M]ommy had a gun. She was trying to protect us from the bad guys. So if a bad guy come she shoots him and protects us."

The CSW learned Father is currently serving a seven-year sentence at a federal prison in Herlong, California for a controlled substance offense.

The CSW received a call from maternal aunt, who stated she and paternal grandmother (PGM) "would like to care for the children." The next day, the CSW received a call from another maternal aunt who said she would like to have the children placed with her. Mother told the CSW she "does not want

3

maternal grandmother [(MGM)] to care for her children" and "would like her children to be placed with the paternal family."

At the October 9, 2020 detention hearing, the juvenile court placed the children with paternal aunt and PGM, with whom the children had been residing for several years before the incident. The juvenile court ordered monitored visitation and reunification services for Mother, and "[n]o visitation to the Father unless and until he makes contact with [DCFS]."

II.    *Continued Investigation and Proceedings*

On October 16, 2020, the CSW received a phone call from Father who stated he is the biological father of both children; he denied Native American ancestry. Father indicated he is serving a 10-year sentence for transporting drugs across the border. His release date is April 27, 2028.

On October 26, 2020, the juvenile court ordered the federal prison at Herlong to allow Father's "appearance at hearing affecting parental rights."

On November 20, 2020, Mother filed her Parental Notification of Indian Status—Judicial Council form ICWA-020— and marked the box indicating she has "no Indian ancestry as far as I know."

On December 7, 2020, the juvenile court received a response from the federal prison about Father's court appearance: "FEDERAL FACILITIES DO NOT RELEASE INMATES FOR CHILD CUSTODY/FAMILY DEPENDENCY CASES. UNABLE TO TRANSPORT." Father's counsel informed the court: "I did actually call the federal facility myself. And while they're on lock-down, which is the case, they wouldn't even bring him to the phone. They won't even bring them legal in order to appear on any case. So right now they're on COVID lock-

4

down." The juvenile court then reviewed Mother's ICWA-020 form and found "ICWA does not apply" as it pertains to Mother.

On January 8, 2021, Father filed a Parental Notification of Indian Status (ICWA-020 form) and indicated "No known ICWA."

III.  *Jurisdiction and Disposition*

Adjudication took place on January 25, 2021. The juvenile court found Father to be the presumed father of the children. Father made no argument, but noted he was a non-offending parent in the section 300 petition. The juvenile court sustained the petition as to Mother. The court found out-of-home placement necessary and appropriate. The court ordered monitored visitation and reunification services for Mother and ordered DCFS to assess paternal aunt and PGM as visitation monitors.

IV.  *Section 366.21 Status Review Proceedings*

In the status review report filed July 16, 2021, DCFS informed the court that Mother had been incarcerated at Folsom State Prison since April 2, 2021. PGM reported to the CSW that both parents have weekly telephone contact with the children. The CSW observed the children were well cared for, had home-cooked meals, clothing and toys, and appeared "happy." M.R. told the CSW that she does not want to leave PGM's home. PGM indicated she "does not have plans to take the children to visit their parents" as both prisons are "far from [her] home." PGM wanted to provide permanent placement for the children.

At the section 366.21, subdivision (e) hearing held September 14, 2021, the juvenile court found progress by Mother and Father in court-ordered treatment was "minimal" and that "the current placement continues to be necessary and

5

appropriate." The court ordered DCFS to complete steps necessary to finalize the permanent placement of the children.

In the status review report filed February 25, 2022, DCFS informed the juvenile court that Mother was arrested on January 11, 2022 for drug possession and carrying a loaded gun. As to Father, the CSW sent correspondence to him in September 2021 and February 2022 but received no response.

In a last minute information (LMI) filed April 5, 2022, DCFS informed the court that its request for Father to participate in the upcoming hearing (telephonically or by video) was denied. Mother was arrested again on March 22, 2022. In an LMI filed April 26, 2022, DCFS informed the court that the CSW "had several missed calls from [F]ather during times that [the CSW] was in meetings and training." In addition, PGM's home was assessed for "permanent placement" of the children. PGM stated she was interested in adopting the children.

At the section 366.21, subdivision (f) review hearing held May 2, 2022, Father argued it is "wholly improper to move towards terminating [his] parental rights" because he's "a non-offending party." He requested the court make a finding that "no reasonable services were offered during this review period" because Father contacted the CSW "several" times and "incarceration in and of itself is not enough to warrant any kind of jurisdiction." Father requested "home-of-parent Father order, or . . . legal guardianship with paternal grandmother."

The LMI filed May 16, 2022 provided that PGM wanted to adopt the children.

At the continued section 366.21, subdivision (f) review hearings held June 7 and 8, 2022, the juvenile court found "no reasonable services were provided" by DCFS to Father. Father

6

indicated, "If the recommendation has changed to continued family reunification, then I will submit on that." Later during the hearing, Father said, "At the previous [section 366.21, subdivision (f)] hearing, . . . I had . . . requested a home of parent Father order. I wanted to officially on the record withdraw that based on the new Department recommendations."

In the status review report filed November 16, 2022, the CSW stated Mother "denied having ICWA heritage in her family." The CSW asked PGM if Father has ICWA heritage, and she denied, stating Father is from El Salvador. DCFS noted Father "remains incarcerated and cannot provide appropriate care for the children and/or meet their financial needs." DCFS recommended that reunification services terminate as to Father.

At the section 366.21 subdivision (f) review hearing on March 7, 2023, Father argued he "was not ordered to do any programs . . . for this case [because] he was also non-offending in this petition." He requested the court find "he is in compliance with court-ordered case plan being that he was not, in reality, ordered to do any programs." Father "acknowledge[d] the fact that he is incarcerated [until] roughly five years from today. Father does desire that the minors have permanency with the current caregiver [PGM]." Father "submit[ed] on termination of reunification services . . . so that [DCFS] and all parties could move forward with [the] permanent plan."

After some discussion, the juvenile court found "the argument that [Father] is not in compliance is misplaced. There was nothing for him to be in compliance with. [¶] However, since he has agreed to family reunification services being terminated and permanent plan possibly with the [PGM], the court is going to follow [DCFS's] recommendation with respect to Father."

7

The court found that "return of the child[ren] to the physical custody" of the parents "would create a substantial risk of detriment to the child[ren], creating a continued necessity for and appropriateness of the current placement." The court found, "At this juncture, the children are entitled to permanency in the form of . . . adoption." The matter was set for a section 366.26 hearing to select and implement a permanent plan of adoption for the children.

V.      *Section 366.26 Permanency Planning*

The LMI filed May 23, 2023 stated DCFS was "working on Adoption Readiness" with PGM, who "agree[d] with the permanent plan of adoption." Both children wished to stay in their present home.

In the report filed July 7, 2023, the CSW reported being told by M.R. that while she "wants to have contact with Mother . . . , she did not want to live with [M]other." Both children reported they want to be adopted by PGM.

The status review report filed August 18, 2023 stated DCFS requested permission from Father's correction counselor for weekly parenting classes or individual therapy, but was denied. In April 2023, visitation for inmates was reinstated at Herlong. PGM transported the children to visit Father in June 2023, and the visit "went well." The children have weekly telephone contact with both parents.

8

VI. *Permanency Planning Review Proceedings*

At the permanency planning review hearing held September 5, 2023, the juvenile court found "by clear and convincing evidence that [DCFS] has complied with the case plan in making reasonable efforts to complete whatever steps necessary to finalize the permanent placement of the children."

On September 19, 2023, DCFS requested the juvenile court "terminate parental rights and find that these children are adoptable and that there are no exceptions to adoption at this time." Father argued the parental benefit exception to adoption applied to him, as Father had weekly telephone contact with the children, which is "the maximum amount that he's been able to based on his situation." He argued "these weekly visits [have] formed a parent-child bond" and that "it would be detrimental to the children to sever[] that bond." Minors' counsel agreed with DCFS's recommendation and argued "the nature of the parents' contact with the children over the past three years [does not rise] to the level required for the court to find that an exception to adoption applies."

The juvenile court ruled: "[T]hese children were removed from their parents on October 6, 2020, and placed with their paternal grandmother on December 15th, 2020." "Father, unfortunately, has been incarcerated . . . for the majority of the time of this case, and . . . in-person visitation, as [PGM] stated . . . [is] an all-day event for the children . . . and the children have to miss school" because of the four-hour distance between PGM's home and Father's prison. Father "has maintained contact with the children on a telephonic basis, but that does not arise to the level of a parental-child bond." The children have "a secured bond" with PGM over the last three years and "look to [her] for

9

care, providence, consistency, and stability that a child will look for in a parent, and these children do not see the parents in that parental role." The court found the severance of the parental relationship did not outweigh the security and finalization of the adoption. The court found "by clear and convincing evidence that it would be detrimental to the child[ren] to be returned to the parents" and that no exception to adoption applies. It terminated parental rights and designated PGM as the prospective adoptive parent.

Both Mother and Father filed notices of appeal.

## DISCUSSION

### I.     *The Duty of Initial ICWA Inquiry Was Inadequate*

The sole issue raised by Mother on appeal is whether DCFS and the juvenile court complied with ICWA as they "failed to complete adequate inquiry when it did not ask available paternal and maternal relatives about the child[ren]'s possible Native American ancestry." The juvenile court and DCFS have "an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . may be or has been filed, is or may be an Indian child." (§ 224.2, subd. (a); see *In re Isaiah W.* (2016) 1 Cal.5th 1, 9, 11–12.) This continuing duty can be divided into three phases: the duty of initial inquiry, the duty of further inquiry, and the duty to provide formal ICWA notice. (*In re D.F.* (2020) 55 Cal.App.5th 558, 566.) It is the first phase, the duty of initial inquiry, that is at issue here. The initial inquiry, governed by section 224.2, subdivision (b), requires DCFS to ask "extended family members" whether the child may be an Indian child. (§ 224.2, subd. (b).)

10

As the facts before us are not disputed, we independently determine whether ICWA's requirements were met. (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1051.)

Here, Mother argues the juvenile court and DCFS failed to conduct their duty of initial inquiry by asking MGM and the children's aunts what they knew about possible Indian heritage. DCFS does not oppose reversal and remand to ensure proper initial inquiry is conducted pursuant to ICWA. We agree that DCFS's failure to ask MGM and the children's aunts about any possible Indian ancestry, especially when DCFS was in contact with them throughout the proceedings, violated the express mandate of section 224.2, subdivision (b). (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1136–1137.) An inadequate ICWA inquiry requires conditional reversal of the juvenile court's order terminating parental rights with directions to the juvenile court and DCFS to conduct an adequate inquiry, supported by record documentation. (*Ibid.*)

II.  *The Juvenile Court Made a Proper Finding of Detriment at the Section 366.26 Hearing*

Father argues, for the first time on appeal, that the juvenile court erred when it terminated his parental rights "in the absence of a valid finding of detriment." Father never raised this at the section 366.26 hearings held on September 5 and 19, 2023. The record reflects the only argument Father made was that the parental benefit exception to adoption applied. Nevertheless, we briefly address his argument.

11

Father is mistaken. The juvenile court made the requisite detriment finding here; on September 19, 2023, it found "by clear and convincing evidence that it would be detrimental to the child[ren] to be returned to the parents" and that no exception to adoption applies. Father also argues the juvenile court's removal of the children from his custody and care at the January 5, 2021 adjudication hearing was error. The order he complains of has long since become final. (Cal. Rules of Court, rule 8.406(a).)

III. *The Beneficial Parental Relationship Exception to Adoption Did Not Apply*

Father contends the juvenile court abused its discretion when it found the beneficial relationship exception to adoption did not apply. We disagree.

A. <u>Applicable Law and Standard of Review</u>

Once a court determines a child cannot be reunified with the parents, it must select a permanent plan for the child. (*In re Caden C.* (2021) 11 Cal.5th 614, 630–631 (*Caden C.*); § 366.26.) If the court finds by clear and convincing evidence that the child is likely to be adopted, the court must select this option unless one of certain enumerated exceptions applies, including the parental-benefit exception. (*Caden C.*, at pp. 630–631; § 366.26, subds. (b) & (c)(1)(B)(i).) "In other words, when a parent establishes that one of the exceptions applies, adoption or termination is not 'in the best interest of the child.' " (*Caden C.*, at p. 631.)

Parents seeking to apply the parental-benefit exception bear the burden of showing: 1) they maintained consistent visitation to the extent permitted; 2) a relationship exists which benefits the child; and 3) the detriment of losing the relationship

12

would not be outweighed by the benefits of the stability and permanency of adoption.  (*Caden C.*, *supra*, 11 Cal.5th at p. 631.)

A hybrid standard of review applies.  (*Caden C.*, *supra*, 11 Cal.5th at p. 639.)  We review a juvenile court's findings under the first two prongs for substantial evidence.  (*Id.* at pp. 639–640.)  We apply the abuse of discretion standard to the juvenile court's findings as to the third element.  (*Id.* at p. 630.)

B.    Analysis

Father contends the juvenile court had "insufficient evidence" to make a determination as to the applicability of the beneficial parental relationship exception to adoption.  He argues DCFS did not include information about Father's visitation.

The burden to show the applicability of the parental-benefit exception is not on DCFS.  It is on Father.  (*In re A.L.* (2022) 73 Cal.App.5th 1131, 1153; *Caden C.*, *supra*, 11 Cal.5th at p. 638.)  In addition, DCFS consistently reported about Father's contact with the children, whether it was the weekly telephone calls or the in-person visit at Father's prison in June 2023.

Father argues there were errors in the juvenile court's finding the parental-benefit exception inapplicable.

We review the three prongs.

1.    ***Consistent Visitation***

The juvenile court acknowledged Father's limited visits with the children due to his incarceration and the great distance between PGM's home and the federal prison in Herlong.  Notwithstanding these difficulties, the juvenile court noted "Father has maintained contact with the children on a telephonic basis."  The juvenile court's finding is supported by substantial evidence.

13

## 2. *Existence of Beneficial Relationship*

Father contends juvenile court's analysis of the second element was "perfunctory" and "cursory." He also contends that the court based its conclusion upon an improper consideration, i.e., that Father did not occupy a parental role in the children's lives.

Under *Caden C.*, the parent establishes the existence of a beneficial relationship when "the child has a substantial, positive, emotional attachment to the parent." (*Caden C.*, *supra*, 11 Cal.5th at p. 636; see *In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.) The juvenile court here found that while "Father has maintained contact with the children on a telephonic basis," the children have "a secured bond" with PGM over the last three years and "look to [her] for care, providence, consistency, and stability that a child will look for in a parent, and these children do not see the parents in that parental role."

We disagree with Father that the juvenile court imposed a requirement that Father establish he occupied a parental role in the children's lives. The juvenile court made findings based on evidence that shows the minors turn to PGM for stability and care and are thriving in PGM's home. (See *In re B.D.* (2021) 66 Cal.App.5th 1218, 1230 ["A positive attachment between parent and child is necessarily one that is . . . nurturing and provides the child with a sense of security and stability."].) Father has not met his burden to show that the minors have a substantial emotional attachment to him. The juvenile court's findings are supported by substantial evidence.

14

### 3. *Weighing Detriment of Severance Against Benefits of Adoptive Home*

Father argues the juvenile court abused its discretion by failing to properly balance the evidence to determine the extent of detriment that would result from termination of parental relationship.  He contends " 'No delicate balancing act' occurred in this case."

We are aware of no requirement, and Father points us to none, that the juvenile court (in finding the parental-benefit exception inapplicable) must recite specific findings as to its conclusions about any of the three elements of the exception.  Thus, although express findings by the juvenile court in support of its decision are helpful in conducting appellate review, they are not required in this instance.  (*In re A.L.*, *supra*, 73 Cal.App.5th at p. 1156.)  Plus, nothing in the record indicates the juvenile court failed to weigh the potential benefits that adoption would afford the children against the potential harm of the loss of the parental rights.  (*Ibid.*)  The record shows the court considered many factors and found that severance of the parental relationship did not outweigh the security and finalization of adoption.  The children themselves expressed a desire to stay with PGM, with whom they felt safe.  The juvenile court did not err.

### DISPOSITION

The order terminating parental rights is conditionally reversed and remanded with directions that the juvenile court order DCFS to inquire of extended relatives as to the children's possible Indian heritage under ICWA.  After initial inquiry has been made, the juvenile court shall make ICWA findings at a

15

noticed hearing.  If the juvenile court finds ICWA inapplicable, it shall reinstate its September 19, 2023 order terminating parental rights.  If the juvenile court concludes ICWA does apply, then it shall proceed in conformity with ICWA and California implementing provisions.  (See 25 U.S.C., § 1912, subd. (a); §§ 224.2, subd. (i)(1); 224.3, 224.4.)  All other findings and orders made September 19, 2023 are otherwise affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

STRATTON, P. J.

We concur:

WILEY, J.

VIRAMONTES, J.

16